Robert E. Grossman (RG-3602)
Schuyler G. Carroll (SC-0100)
Christopher J. Giaimo, Jr. (CG-2260)
Arent Fox PLLC
1675 Broadway
New York, New York 10019
(212) 484-3900

Attorneys for the Debtor

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

In re                                             Chapter 11

LAKE DIAMOND ASSOCIATES, LLC,                     Case No. 04-11182

                         Debtor.
----------------------------------------------------------x

LAKE DIAMOND ASSOCIATES, LLC,

                              Plaintiff,          Adv. Pro. No.: 04-02750

vs.

COMMUNITY NATIONAL BANK,

                              Defendant
----------------------------------------------------------x

### DEBTOR'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION OF COMMUNITY NATIONAL BANK TO TRANSFER VENUE OF THE DEBTOR'S CHAPTER 11 CASE AND THE ADVERSARY PROCEEDING TO THE BANKRUPTCY COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION

Lake Diamond Associates, LLC (the "Debtor"), in response to the memorandum of

Community National Bank (the "Movant") to transfer venue of the Debtor's chapter 11 case and

related adversary proceeding to the Middle District of Florida, Jacksonville Division (the

"Memorandum"), respectfully represents as follows:

## STATEMENT OF THE CASE

**A.    Summary of Argument.**

The Debtor, a New York entity, chose the Southern District of New York to file its chapter 11 case and it is undisputed that the Southern District is a proper venue under 28 U.S.C. § 1408. Nonetheless, the Movant seeks to transfer venue to the Middle District of Florida. To overcome the Debtor's choice of a concededly proper venue, the Movant bears a heightened burden of persuasion. Yet, neither the Movant not the Debtor, nor any of the witnesses necessary to resolution of the central disputes in this matter are located in Florida and the only nexus to Florida is the location of assets owned by the Debtor. Against this background, the Movant cannot establish that the Middle District of Florida would be more convenient to the parties.

The undisputed facts are as follows[1]:

1.    The Debtor is a limited liability company organized under the laws of the State of New York.

2.    The Debtor's principal place of business is in New York, blocks from this Bankruptcy Court.

3.    All persons charged with the Debtor's decision making are based in New York.

4.    The Debtor's principals reside in New York.

5.    The Debtor's books and records are in New York.

6.    All of the Debtor's members are either New York entities or have principal places of business in New York.

7.    The loan documents between the Debtor and the Movant which are the subject of the pending Adversary Proceeding (defined below) were executed by the Debtor in New York.

8.    The Committee is represented by attorneys at Duane Morris, LLP, based in New York.

---

[1] The factual background to the response memorandum is based primarily upon the accompanying Declaration of Jacob Frydman, and the exhibits attached thereto.

9.    The Debtor is represented by attorneys at Arent Fox PLLC and the individual attorneys in charge are based in New York.

10.   The Debtor's proposed DIP lender is in New York.

11.   The Movant is based in Virginia.

12.   The Movant is represented by attorneys from Hunton & Williams, whose attorney in charge is based in New York.

13.   All relevant witnesses to this chapter 11 case are either in New York, for the Debtor, or Virginia, for the Movant – there are no relevant witnesses in Florida.

14.   The Committee, on behalf of the general unsecured creditors, opposes the transfer of venue to Florida.

The Debtor intends to sell its assets pursuant to 11 U.S.C. § 363. Accordingly, the Debtor's case will be managed under chapter 11, not chapter 7. As the analysis below demonstrates, these are fundamentally different processes requiring different results under 28 U.S.C. § 1412. When a debtor is selling its assets under chapter 11, rather than liquidating under chapter 7, case law conclusively holds that venue should remain where the debtor's decision making center is located, in this case, the Southern District of New York.

In addition to the proposed sale, the Debtor seeks relief pursuant to the Adversary Proceeding. The Adversary Proceeding involves claims against the Movant for fraudulent transfer under 11 U.S.C. § 548, identical state law, as well as claims for breach of contract. These are core matters which do not require the parties' presence in Florida in order to be litigated. Again, neither the Debtor, the Movant, nor any witnesses are located in Florida. Accordingly, common sense dictates against transferring the Debtor's chapter 11 case or the Adversary Proceeding to Florida.

In short, the particular facts of this chapter 11 case support this Court's retention of jurisdiction to oversee an orderly and successful sale of assets for the benefit of all creditors and

the adjudication of the claims in the Adversary Proceeding. Therefore, the Movant's Memorandum to transfer venue should be denied.

**B.    Procedural History.**

On February 24, 2004 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The Debtor continues to operate its business and manage its assets as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On April 5, 2004, the United States Trustee (the "US Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee").

On April 28, 2004, the Movant filed the Memorandum seeking to transfer venue of the Debtor's chapter 11 case and the Adversary Proceeding to the Middle District of Florida.

## FACTS

The Debtor is a limited liability company organized under the laws of the State of New York and maintains its principal place of business at 111 Fulton Street, New York, New York.

The managing member of the Debtor is Savoy Retirement Communities, Inc. ("Savoy Retirement"), a New York corporation with its principal place of business at 111 Fulton Street, New York, New York. Savoy Retirement holds a 1% interest in Lake Diamond. The Debtor's other members are (i) ZK NIM II, LLC ("ZK"), a New York limited liability company with its principal place of business at 111 Fulton Street, New York, New York, which holds a 49% interest in the Debtor, and (ii) Eden Holdings, LLC, a Delaware limited liability company with its principal place of business at 1120 Avenue of the Americas, New York, New York, which holds a 50% interest in the Debtor.

The chief executive office of Savoy Retirement is New York resident and real estate investor Jacob Frydman. Savoy Retirement and Frydman have specialized, and engaged principally, although not only, in the acquisition and development of senior living and related facilities.

Savoy Retirement and Frydman first did business with the Movant when one of the Movant's major banking clients, TRBC Ministries, Inc., reached out for New York expertise and assistance to develop a retirement community in Lynchburg, Virginia known as "Liberty Village". TRBC approached and solicited Savoy Retirement and Frydman in New York, and eventually formed Liberty Village Limited Partnership. Thereafter, TRBC steered the credit financing for the project – a loan of $20 million – to the Movant. Movant thus at all times understood the New York-basis of Savoy Retirement's operations.

The Debtor was formed in March 2002 to acquire, own and develop certain real property located in Marion County, Florida (the "Property"). The Property consists of approximately 762 out of 950 residential home sites (the balance having been sold prior to the Debtor's acquisition) to be built around an existing eighteen (18) hole golf course and 43-acre man-made lake (collectively, the "Project").

In April 2002, the Debtor executed a contract to purchase the Property from Atlantis Ventures, Ltd. The Debtor required financing to supplement its equity contribution to purchase the Project. Based on its prior relationship through Liberty Village, the Debtor, through Mr. Frydman, contacted the Movant as one of the possible providers of the financing needs for the Project.

In late April 2002, Mr. Frydman and the Movant began negotiating the terms of the proposed financing for the Project. Mr. Frydman participated in these negotiations from his

office in New York. These negotiations included phone calls, mailings and facsimiles between Mr. Frydman in his New York office and Mr. Worth Carter Harris in his Virginia office. Ultimately, the Movant agreed to loan the Debtor $6 million to acquire and develop the Project (the "Loan") by issuing a loan commitment to Mr. Frydman in New York.

Pursuant to the loan commitment, the Debtor issued the Movant a promissory note in the original principal amount of $6 million (the "Original Note") dated May 20, 2002. In conjunction with the Original Note, the Debtor and the Movant entered into a Mortgage and Security Agreement dated May 20, 2002 (the "Original Mortgage") which purported to grant the Movant a security interest in the Property as well as certain personal property. The lien granted by the Original Mortgage covered most, but not all, of the Property.

As a result of slow sales, the Debtor had difficulty maintaining the debt service on the Loan and was operating at a deficit. Again, communicating from his office in New York, Mr. Frydman contacted the Movant on behalf of the Debtor to extend the maturity date of the Original Note and to increase the Loan amount in order to provide the funds necessary to construct a clubhouse at the Project.

Pursuant to a commitment letter dated January 22, 2003, delivered to Mr. Frydman in New York, the Movant agreed to extend the Debtor an additional $3 million to commence construction of the clubhouse, as well as extend the maturity date of the Loan. Mr. Frydman executed the commitment letter in New York and returned the same to the Movant in Virginia.

Mr. Frydman and Mr. Harris continued to negotiate the terms of the financing from their respective offices in New York and Virginia. Ultimately, the Debtor and the Movant entered into a financing arrangement whereby the principal of the Loan was increased by $3 million (the

"Amended Loan"). In consideration thereof, the Debtor granted the Movant a security interest in those parcels of the Property which were not previously encumbered.

The additional lien was granted pursuant to a Mortgage Modification and Spreader Agreement (the "Spreader Agreement"), a Mortgage Modification and Extension Agreement and Receipt of Future Advance (the "Future Advance Agreement"), and a Collateral Assignment of Leases, Rents and Profits (the "Collateral Assignment") all dated as of June 20, 2003. The Original Note, Original Mortgage, Spreader Agreement, Future Advance Agreement, and the Collateral Assignment are collectively referred to as the "Pre-Petition Loan Documents." All Pre-Petition Loan Documents were negotiated by Mr. Frydman and his counsel in New York, and were executed by Mr. Frydman on behalf of the Debtor in New York.

At the closing, the Movant drew down on the line of credit to pay real estate taxes and interest, and the Debtor advanced additional sums to pay the Movant's commitment fee. Thereafter, despite repeated requests, the Movant denied any additional draw requests. As a result, the Debtor could not construct the clubhouse and recreational facilities necessary to attract home buyers to the Project.

By letter dated January 16, 2004 and addressed to Mr. Frydman at his business address and home address, both in New York, counsel for the Movant informed the Debtor that it was allegedly in default under the Amended Loan for failing to make interest payments when due. By letters dated January 20, 2004 and February 3, 2004, similarly addressed, the Movant called the Amended Loan in default, purported to accelerate the balance, and threatened to exercise all available remedies, including, presumably, foreclosure on the Property.

As a result of the foregoing actions, the Debtor filed its voluntary chapter 11 petition seeking protection in this Court.

Pursuant to an order dated March 24, 2004, the Debtor retained the law firm of Arent Fox PLLC as its counsel. Arent Fox is over-seeing the representation from its New York office.

Since the Petition Date, the Debtor has worked quickly to file the necessary pleadings seeking relief which will bring its chapter 11 case to a quick and efficient conclusion. For instance, on February 27, 2004, the Debtor filed an emergency motion authorizing use of cash collateral on an interim and final basis (the "Cash Collateral Motion"). An interim hearing on the Cash Collateral Motion was held on March 4, 2004. At the conclusion of the hearing, the Court entered an order granting the Cash Collateral Motion on an interim basis (the "Interim Cash Collateral Order"). The Interim Cash Collateral Order authorized the Debtor's use of cash collateral on an interim basis and scheduled a final hearing on the Cash Collateral Motion for April 7, 2004, which hearing has been continued upon stipulations with the Movant (the "Final Cash Collateral Hearing"). The Movant has consented to the Debtor's use of cash collateral pursuant to the terms of the Interim Cash Collateral Order during the continuances of the Final Cash Collateral Hearing.

On March 8, 2004, the Debtor filed a Verified Complaint (the "Complaint") against the Movant asserting claims for, inter alia, avoidance of certain liens on the Property pursuant to 11 U.S.C. § 548, as well as the applicable Florida Fraudulent Transfer statutes (the "Adversary Proceeding"). On March 8, 2004, the Clerk of the Court issued a summons with respect to the Complaint (the "Summons"). The Summons, together with the Complaint, was served on the Movant in Virginia pursuant to Rule 7004(h) on March 10, 2004.

The Movant retained the law firm of Hunton & Williams. On April 7, 2004, the Movant, through, inter alia, the New York office of Hunton & Williams, filed notices of appearance in the Adversary Proceeding as well as the Debtor's chapter 11 case.

At the request of counsel to the Movant, the Debtor extended the Movant's time to respond to the Complaint from April 7, 2004 to April 21, 2004. In light of the extensions, the parties agreed to adjourn the pre-trial conference in the Adversary Proceeding until April 29, 2004.

On April 21, 2004, the Movant filed an Answer to the Complaint, and on April 27, 2004, the Movant filed an Amended Answer to the Complaint to, inter alia, include the affirmative defense of improper venue.

On April 20, 2004, the Debtor filed an Application for Authority to Retain General Capital Partners, LLC ("GCP") as an Investment Banker. GCP is a recognized consulting firm specializing in turnarounds, consulting, refinancing, sales of going concerns, purchase of real estate, and liquidation of assets of financially troubled companies. GCP provides services nationally, but maintains its principal place of business in Greenwood Village, Colorado. As noted, the Debtor believes, as do the other parties in this case, that the Project has substantial value in excess of the Debtor's debts. The Debtor seeks to utilize GCP's expertise to market the Project for sale with the goal of achieving a 100% distribution to all creditors.

On April 26, 2004, the Debtor filed a motion to jointly administer its chapter 11 case with the pending chapter 11 case of its affiliate, Liberty Village.

On April 28, 2004, the Movant filed motions to transfer venue of the Debtor's main case as well as the Adversary Proceeding to the Middle District of Florida (the "Venue Motions").

On May 5, 2004, the Debtor filed an emergency motion seeking an order pursuant to 11 U.S.C. § 364 and Fed. R. Bankr. P. 4001, (a) authorizing the Debtor to enter into a post-petition financing facility on a superpriority and secured basis, (b) scheduling a hearing on shortened notice, and (c) scheduling a final hearing, all as more particularly described herein (the "DIP

Motion"). The Debtor, through counsel, has had several discussions regarding the terms of the proposed financing with Movant's counsel as well as Committee counsel.

Pursuant to a Third Stipulation and Consent Order Authorizing Use of Cash Collateral Pursuant to Terms of Interim Order filed May 6, 2004, the Debtor and the Movant agreed to adjourn the Final Cash Collateral Hearing until a final hearing on the DIP Motion. The Movant consented to the Debtor's use of cash collateral during this period.

Since its formation and retention of the New York office of Duane Morris, LLP as counsel, the Committee has worked closely with the Debtor regarding its chapter 11 case, including but not limited to, negotiating the terms of cash collateral, retention of professionals, and securing post-petition financing.

## I.
## VENUE IS PROPER IN THE SOUTHERN DISTRICT
## OF NEW YORK AND SHOULD NOT BE DISTURBED

Venue in chapter 11 cases is governed by 28 U.S.C. § 1408. Pursuant to 28 U.S.C. § 1408(1), venue of a chapter 11 case is proper when the case is commenced in the district in which the debtor is domiciled or maintains it principal place of business. In pertinent part, the statute provides as follows:

> [A] case under title 11 may be commenced in the district for the district –
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the [180] days immediately preceding such commencement . . . .

28 U.S.C. § 1408(1). The Debtor maintains its principal place of business at 111 Fulton Street, New York, New York and the Debtor is considered domiciled in New York. Thus, venue of the

Debtor's chapter 11 case is proper in the Southern District of New York. No party disputes this point.

It is well established that, when a debtor has chosen a venue that is proper, that choice is entitled to be accorded "great weight" and deference. See In re Enron Corp., 284 B.R. 376, 386 (Bankr. S.D.N.Y. 2002) (hereinafter "Enron II") (denying motion to transfer bankruptcy of wholly-owned, Puerto Rico based Enron subsidiary to District of Puerto Rico); In re Enron Corp., 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) (hereinafter "Enron I") (denying motion to transfer venue of entire Enron bankruptcy case to Southern District of Texas).

The entity requesting a change in venue bears the burden of demonstrating that a transfer of venue is warranted. See Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1390 (2d Cir. 1990); Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Ref. Co.), 596 F.2d 1239, 1241 (5th Cir. 1979) (hereinafter "CORCO"). As the court in Enron I, noted, "Where a transfer would merely shift the inconvenience from one party to the other, or where after balancing all the factors, the equities leaned but slightly in favor of the movant, the [debtor's] choice of forum should not be disturbed." Enron I, 274 B.R. at 342-43 (citing In re Garden Manor Assocs., L.P., 99 B.R. 551, 555 (Bankr. S.D.N.Y. 1988)); In re Great Am. Res. Inc., 85 B.R. 444, 446 (Bankr. N.D. Ohio 1988) ("venue decisions should not merely shift the inconvenience from one party to another"); DeRosa v. C.P.P. Corp. (In re Legend Indus.) 49 B.R. 935, 938 (Bankr. E.D.N.Y. 1985)

In short, when venue is proper, as it is here, deference is given to the debtor's venue selection and it can only be changed based on a strong showing under 28 U.S.C. § 1412 that the interest of justice or convenience of the parties requires change. Nothing in the record makes

that strong showing. Indeed, the Movant has failed to demonstrate by the requisite preponderance of evidence that a change in venue for this properly filed chapter 11 case is warranted. Other than an apparent reluctance to be before this Court, the Movant has failed to show that the Middle District of Florida would be more convenient to the Debtor, the Committee, or significantly, the Movant itself.[2] Given the location of the Debtor, its professionals, major parties in interest, including the Movant, and the convenience associated with a New York forum (compared to that of Florida), the Debtor's decision to commence this chapter 11 case in the Southern District of New York in conformity with the venue provisions of 28 U.S.C. § 1408 should not be disturbed.

## II.
### MOVANT CANNOT MEET ITS BURDEN TO SHOW THAT TRANSFER OF VENUE IS EITHER IN THE INTEREST OF JUSTICE OR FOR THE CONVENIENCE OF THE PARTIES

Section 1412 of 28 U.S.C. provides: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties." 28 U.S.C. § 1412; see also FED. R. BANKR. P. 1014(a)(1) (implementing § 1412 by articulating standard for transfer). When analyzing whether to grant relief in the interest of justice or the convenience of the parties, courts are guided by six specific factors. These six factors are:

(1) the proximity of creditors of every kind to the Court;

(2) the proximity of the bankrupt (the debtor) to the Court;

(3) the proximity of witnesses necessary to the administration of the estate;

(4) the location of assets;

---

[2] The Debtor notes that in the event the case is transferred, in addition to the Debtor and the Committee, the Movant would also have to hire local counsel as the closest Hunton & Williams office in Miami is approximately 350 miles from the Courthouse for the Middle District of Florida.

(5) the economic administration of the estate; and

(6) the necessity for ancillary administration if bankruptcy should result.[3]

Enron II, 284 B.R. at 387 (citing CORCO, 596 F.2d at 1247); In re Garden Manor Assocs., L.P., 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988) (same).

## A.      The Economic Administration of the Estate Weighs Against Transfer

Courts have consistently held that the most important of the above criteria is economic administration of the estate. See Enron II, 284 B.R. at 395 ("It is clear that the most important of these considerations is the economic and efficient administration of the estate.") (citing CORCO, 596 F.2d at 1247); In re Garden Manor Assocs., 99 B.R. at 554 ("[The economic administration] factor is generally held to weigh most heavily in the determination of whether to transfer venue."); In re Melgar Enters., 140 B.R. 43, 48 (Bankr. E.D.N.Y. 1992) ("Of all of the factors to be considered in determining venue, perhaps the economics of administration of the estate is one of the most important.").

When considering the economic administration of the estate, courts focus on whether the debtor-in-possession will be able to formulate a plan that is acceptable to all relevant parties. See Enron II, 284 B.R. at 395. This requires an analysis of the post-petition efforts of the debtor-in-possession. Id. (citing In re International Filter Corp., 33 B.R. 952, 956 (Bankr. S.D.N.Y. 1983)). In the instant case, such efforts must be viewed in light of the fact that the Debtor intends conduct a sale of its assets.

### 1.      New York Affords Greater Access to Capital

The success of the Debtor's chapter 11 depends on the Debtor's ability to sell the Project to maximize a return to creditors. This effort will require the Debtor, the Debtor's professionals, and the Committee, to structure a transaction that takes advantage of New York's capital markets

---

[3] This factor is often discounted by courts. See Enron I, 274 B.R. at 343.

and the relationships that the Debtor already has with the financial community. Indeed, the Debtor has already benefited from this case being in New York by virtue of the fact that it was able to secure quickly a reasonable DIP financing from a New York lender. Further, the Debtor intends to use his contacts and recognition in the New York real estate community to gain the maximum value for the sale of the Project. Such contacts have already begun to bear fruit, as the Debtor has already received unsolicited offers for the Project.

Furthermore, the vast majority of negotiations concerning financing and the sale of the Project will take place among the Debtor's management, as well as the professionals already retained in this case, all of whom are located in New York. Indeed, the Debtor is unaware of any parties in Florida who would have any involvement in the proposed transaction. In short, New York is a more convenient location for consummating a sale of the Project and formulating a plan which incorporates the same.

2.    Asset Sale Can Be Effectively Accomplished New York

It is undisputed that the Debtor's management is in New York, literally walking distance to this Court. It should be equally undisputed that these individuals will be vital to negotiating the highest and best offer for the Project. This fact is highly probative on the Debtor's ability to formulate a plan and has been taken into consideration by the courts.

In Enron II, the debtor's assets were located in San Juan, Puerto Rico. The debtor, through its pending chapter 11 case in the Southern District of New York, sought to sell those assets. Certain creditors in Puerto Rico sought to sever the case and have it transferred to the District of Puerto Rico. The court closely analyzed the economic and efficient administration of the estate test over the back-drop of the debtor's planned asset sale. The court found probative that those persons charged with the financial responsibility of the debtor were not located in

Puerto Rico, rather, they were located in New York. As a result, the court concluded, inter alia, that the access to capital in New York, combined with the presence of professionals and management in New York to negotiate the sale weighed heavily in favor of keeping the debtor's case in New York. Enron II, 284 B.R. at 396.

In In re Garden Manor Assocs., the Chapter 11 debtor was a limited partnership whose sole asset consisted of an apartment complex in Arizona. The debtor conducted its business operations primarily from New York. In denying the only secured creditor's motion to transfer venue to the District of Arizona, the court held that economic administration of the estate would be facilitated by retaining the case in the Southern District of New York because the debtor's major business decisions emanated from New York. Garden Manor Assocs., 99 B.R. at 554-55. Retaining the case in New York meant that the debtor's ability to raise capital, renegotiate its loan terms, or locate a purchaser for the apartment complex would be facilitated. Id. at 555.

Similarly, in In re Melgar Enters., the chapter 11 debtor, whose sole asset was real estate located in Illinois, had its principal place of business in New York. The court, in denying the largest secured creditor's motion for a transfer of venue to the Northern District of Illinois, held that economic administration of the estate favored retaining the case in New York because the reorganization of the estate would be best facilitated there. Melgar Enters., 140 B.R. at 48-49.

Despite the more recent and more thoroughly analyzed cases cited above, the Movant relies on In re Old Delmar Corp., 45 B.R. 883 (S.D.N.Y. 1985), for the argument that the location of the Debtor's assets in Florida makes Florida a more economic and efficient venue to administer the Debtor's estate. See Memorandum at 18. Old Delmar is inapposite and entirely distinguishable from the instant case and therefore Movant's reliance is thereon inappropriate.

In Old Delmar, the debtor, Envoy, was a Texas limited partnership whose sole asset was an apartment complex in Texas. The debtor's general partner, Old Delmar, was a Delaware corporation with its principal place of business in New York. Both Envoy and Old Delmar filed chapter 11 petitions in the Southern District of New York. A creditor made a motion to transfer venue to Texas based essentially on the location of the debtor's assets. A critical factor in the court's decision to transfer venue motion was the possibility that the debtor's chapter 11 case would be converted to a chapter 7 in the immediate future. Id. at 885. The court in noted that less than two years earlier, the Texas bankruptcy court administered a sale of the same property to the current debtors during the course of the prior owners' bankruptcy case. Id. The court recognized that since occupancy at the property had not increased since the prior bankruptcy, a conversion of the present bankruptcy case was likely. Id. The court went on to reason that if conversion became necessary, Texas would be the logical forum. Id. Indeed, the Texas court, having previously sold the property, would be in a much better position to oversee a subsequent liquidation of the same property -- a fact which is non-existent in the Debtor's case.

Here, conversion of the Debtor's chapter 11 case to a case under chapter 7 is entirely unlikely. Indeed, as noted, the Debtor intends to sell is assets pursuant to 11 U.S.C. § 363. The Debtor intends to pursue such a sale at the earliest possible moment. The Debtor has already received offers to purchase the Project in amounts which would satisfy all claims in full, including the claims of the Movant. Accordingly, conversion to a chapter 7 is extremely remote and at this point, does not warrant consideration.

In addition, the Movant's factual allegations in support of the "economic administration" factor are simply incorrect. The Memorandum states that the Debtor's estate will be more economically administered in the Middle District of Florida because the Debtor "retains

employees in Ocala, Florida to deal with tenants, collect rents and maintain the Property." See

Memorandum at 19. To the contrary, the Debtor does not have any employees in the entire state

of Florida nor does it own any rental property to which it collects rents. Rather, the Debtor owns

a golf course community where the residences are privately owned and the only income that is

currently derived is from golfers paying greens fees and making purchases at the snack bar.[4]

These facts hardly dictate a transfer of venue away from the management of the Debtor in New

York. Accordingly, the Movant has failed to carry its burden on this factor.

## B. Location of Assets Do Not Weigh In Favor Of Transfer

The real thrust of the Movant's Memorandum to transfer venue is the location of the

Debtor's assets. Indeed, every factor discussed in the Memorandum is premised on the Debtor's

assets being located in Florida. However, despite Movant's contentions to the contrary, the fact

that the Debtor's sole asset is located in Florida is not a talisman requiring transfer to the Middle

District of Florida. To the contrary, location of the Project in Florida is not a significant factor

favoring transfer of the Debtor's chapter 11 case.

In Enron II the court was required to analyze the impact on location of the

debtor's assets in light of the fact the debtor sought to sell such assets in chapter 11. The

court held that the location of the assets is not an important factor when the ultimate goal

of the bankruptcy is to reorganize, further noting that reorganization includes a sale of

assets. Enron II, 284 B.R. at 290-91 (citing In re Conroe Forge & Mfg. Corp., 82 B.R.

781, 784 (Bankr. W.D. Pa. 1988)). Accordingly, the court in Enron II concluded that the

location of the debtor's assets did not weigh in favor of transferring venue.

---

[4] The golf course operates out of a trailer and the staff is leased through a contract with Gevity HR, a human resources firm.

In this case, like in <u>Enron II</u>, the Debtor anticipates selling its assets. Indeed, the post-petition efforts in the Debtor's case have centered around the sale of the Project in the context of a chapter 11. The Debtor's proposed sale will be subject to the requirements of 11 U.S.C. § 363. Considering the nature of the Project, the criteria that the Debtor must meet under 11 U.S.C. § 363 provides adequate safeguards against concerns that the Movant may have about the distance of this Court from the Debtor's assets. Indeed, when a sale of assets is anticipated, firsthand familiarity with the debtor's locale is often unnecessary because the section 363 sale process ensures that evidence will be offered to demonstrate the adequacy of the sale outside the ordinary course of business. <u>See</u> 11 U.S.C. § 363(b)(1); <u>see also</u> <u>Enron II</u>, 284 B.R. at 392. It will thus be incumbent on the Debtor to establish the value of the Project at a sale hearing. This Court should have no issues in conducting such a valuation hearing. <u>See</u> <u>In re Bell Towers Assocs., Ltd.</u>, 86 B.R. 795, 803 (Bankr. S.D.N.Y. 1988) (stating that "[t]here is no doubt that courts can and do value property far from the courthouse"); <u>see also</u> <u>Melgar Enters.</u>, 140 B.R. at 48. Based on the foregoing, the location of the Debtor's assets in Florida does not weigh in favor of transferring venue.

Furthermore, the location of the Debtor's assets is outweighed by the need for the efficient administration of the case in the Southern District of New York, where the Debtor's financing, professionals, and decision making persons are located. <u>See</u> <u>In re Boca Dev. Assocs.</u>, 18 B.R. 648, 654 (Bankr. S.D.N.Y. 1982).

The Movant relies on <u>In re Pavilion Place Assocs.</u>, 88 B.R. 32, 35 (Bankr. S.D.N.Y. 1988), for the proposition that location of a debtor's assets should determine venue. <u>See</u>

Memorandum at 10.  Again, the Movant relies on a case which is clearly distinguishable from the instant case.

The central issue in Pavilion Place Assocs. was the value of the property in relation to the secured debt.  See Pavilion Place Assocs., 88 B.R. at 36.  Accordingly, the court was asked to conduct a detailed analysis of the value in order to resolve issues such as the use of cash collateral and whether the stay should be lifted to allow foreclosure.  Id.

In the Debtor's case, no such issues exist.  As stated above, value of the Property will be determined pursuant to 11 U.S.C. § 363.  In addition, the parties do not dispute that there is ample equity in the Property.  Indeed, the Movant has stipulated to the Debtor's use of cash collateral and the Debtor has received unsolicited offers to purchase the Project for amounts that far exceed the Debtor's secured and unsecured debt.  Accordingly, Pavilion PlaceAssocs. is not instructive nor has the Movant met its burden on this factor.

## C.    Proximity of the Debtor Weighs Against Transfer

As noted, the Debtor's offices are on Fulton Street, mere blocks from this Court.  Indeed, the Debtor could not be more proximate.  This proximity weighs heavily in favor of the Court's retention of this case and prevents the Movant from meeting its burden for a transfer on this issue.  See In re Suzanne de Lyon, 125 B.R. 863, 868 (Bankr. S.D.N.Y. 1991) (denying transfer from Southern District of New York where debtor's principal place of business was in New York); Garden Manor Assocs., 99 B.R. at 555 (movant failed to meet burden justifying transfer from Southern District of New York in chapter 11 case where debtor limited partnership's principal place of business was New York); Boca Dev. Assocs., 18 B.R. at 654 (movant failed to establish by preponderance of evidence that venue should be transferred from Southern District of New York in chapter 11 case where limited partnership debtor's principal place of business was in New York).

In In re Boca Dev. Assocs., the chapter 11 debtor was a limited partnership whose financial affairs were directed from its New York office and whose only asset was real property located in Florida. The largest secured creditor, also located in Florida, moved to transfer venue of the case to a bankruptcy court in Florida. The court denied the motion, holding that the creditor did not establish grounds for the transfer by a preponderance of the evidence in large part because the debtor's principal place of business was in New York. See Boca Dev. Assocs., 18 B.R. at 654.

Transferring the case from this Court, where it is uncontested that venue is proper, to the Middle District of Florida, is inappropriate. Indeed, a change in venue to Florida, where no significant parties are located, would simply make it less convenient for the Debtor's decision makers to efficiently and economically administer the Debtor's estate. See Garden Manor Assocs., 99 B.R. at 555 (noting that a transfer is inappropriate where it "would merely shift the inconvenience from one party to the other").

**D.      Proximity of Witnesses Weighs Against Transfer**

The Debtor concedes, as it must, that the key players in this chapter 11 case reside in both New York and Virginia. Where they do not reside, however, is in Florida, a point that should be undisputed yet is somehow lost on the Movant. This factor, therefore, does not help Movant meet its burden. See, e.g., In re Suzanne de Lyon, 125 B.R. at 868 (refusing venue transfer from Southern District of New York to Southern District of Texas where necessary witnesses located in both New York and Texas).

On this point, the Movant claims, erroneously, that the need for local Florida appraisers weighs in favor of transfer. As previously noted, it is undisputed that the Property has substantial equity and the Movant's lien is adequately protected by an equity cushion. Accordingly, the Movant's assertion that the Property must be appraised by Florida appraisers is

specious, at best. Equally specious is the Movant's suggestion that a section 362 lift stay motion lies in the future and, therefore the case must be transferred to accommodate Florida appraisers. As set forth repeatedly above, the Debtor intends to sell the Project at auction pursuant to 11 U.S.C. § 363. Value will therefore not be a subject of dispute between the Debtor and the Movant, rather, it will be established pursuant to the confines of 11 U.S.C. § 363.

In any event, bankruptcy courts in the Second Circuit have held that the need for local appraiser-witnesses does not tip this factor in favor of transfer. See Melgar Enters., 140 B.R. at 48 (need for witnesses familiar with Illinois real estate did not require transfer from New York to Illinois; noting "that in many of the single asset Chapter 11 cases which this court has administered, appraisers have been called in to evaluate property located throughout the country without causing undue problems nor serious inconvenience for the witnesses involved"); Garden Manor Assocs., 99 B.R. at 554 (need for "local Arizona appraisers to assess the value of the property . . . does not weigh [this factor] in favor of transfer"). Therefore, the proximity of the witnesses does not weigh in favor of transfer of venue.

**E.      Proximity of Creditors Does Not Weigh In Favor Of Transfer**

The Debtor acknowledges, as it must, that the majority of the general unsecured creditors are in Florida. However, simply claiming that numerous creditors are located there does not carry Movant's burden. Instead, a balancing of all the criteria must be undertaken. See Enron II, 284 B.R. at 402 (denying transfer of venue to Puerto Rico bankruptcy court despite fact that all but one of top twenty largest unsecured creditors based in Puerto Rico); Melgar Enters., 140 B.R. at 46 (denying transfer of venue to Illinois bankruptcy court although largest secured creditor and vast majority of unsecured creditors located in Illinois); Boca Dev. Assocs., 18 B.R. at 650-51 (denying transfer to Florida bankruptcy court although largest creditor located in Florida).

The Debtor has approximately $500,000 in general unsecured non-insider debt, which represents a small percentage of the Debtor's total debt. Therefore, general unsecured creditors have a relatively small stake in the conduct of this bankruptcy case *per se*, especially in light of the value of the Debtor's Property and its intent to sell. In any event, these creditors are represented by the Committee who have chosen to retain counsel in New York and who opposes the transfer of the Debtor's case. In addition, the Movant neglects the fact that there is nearly $1.1 million in unsecured debt asserted against the Debtor by its members. As noted above, these members reside or are domiciled in New York. While the location of insider claimholders is less significant than that of non-insiders, it is still a consideration. See Garden Manor Assocs., 99 B.R. at 554. On balance, this factor does not weigh in favor of the Movant.

**F.      Necessity for Ancillary Administration if Bankruptcy Should Result Does Not Weigh In Favor of Transfer**

For the reasons set forth above, the potential for ancillary administration of the Debtor's estate (i.e. conversion to a liquidation) cannot weigh in favor of a transfer of venue. See, e.g., Enron II, 284 B.R. at 403 (finding that movant "failed to carry its burden on this factor" where bankruptcy remained a Chapter 11 proceeding). Furthermore, this factor has been discounted by the courts. See CORCO, 596 F.2d at 1248 ("anticipation of the failure of the Chapter XI proceeding is an illogical basis upon which to predicate a transfer"); In re Suzanne de Lyon, Inc., 125 B.R. at 869 ("structuring the Chapter 11 proceeding with the anticipation of its failure is inconsistent with its rehabilitative purpose, and should not form the basis for transfer of venue."). Therefore, the Movant cannot carry its burden on this factor.

## III.
## THE MOVANT HAS FAILED TO PROVIDE EVIDENCE
## SUFFICIENT TO WARRANT TRANSFER OF THE RELATED
## ADVERSARY PROCEEDING TO THE MIDDLE DISTRICT OF FLORIDA

Rule 7087 of the Federal Rules of Bankruptcy procedure allows a court to transfer the venue of an adversary proceeding only under the same limited circumstances as described above. See FED. R. BANKR. P. 7087 (referencing venue transfer standard of 28 U.S.C. § 1412). Movant has failed to make a showing that warrants either the transfer of the Debtor's chapter 11 case or the Adversary Proceeding from the Southern District of New York.

As set forth above, the Movant has failed to carry its burden of showing that transfer of the Debtor's chapter 11 case is in the interest of justice or the convenience of the parties. Accordingly, this Court is also the appropriate venue for the related Adversary Proceeding as, "[t]he general policy is to have all proceedings related to a bankruptcy case tried in the court where the case is pending." Thomson McKinnon Sec., Inc. v. White (In re Thomson McKinnon Sec., Inc.), 126 B.R. 833, 837 (Bankr. S.D.N.Y. 1991) (refusing to transfer adversary proceedings); see also Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1391 (2d Cir. 1990) (affirming denial of motion to transfer adversary proceeding away from Southern District of New York where bankruptcy case was filed).

Similarly, the Movant has not carried it burden to show that transfer of the Adversary Proceeding would be in the interest of justice or the convenience of the parties. Indeed, of the many factors weighing against transfer of the Adversary Proceeding to Florida one stands out – neither party to the Adversary Proceeding is in Florida. The Adversary Proceeding is a dispute between the Movant (a Virginia entity) and the Debtor (a New York entity). Accordingly, both parties would be required to travel to Florida as well as retain local counsel, all to litigate claims

that could just as easily be litigated in New York, a venue which is undoubtedly more convenient for the Debtor and likely more convenient to the Movant. While courts have noted their reluctance to transfer venue "where a transfer would merely shift the inconvenience from one party to the other," In re Garden Manor Assocs., L.P., 99 B.R. 551, 553 (Bankr. S.D.N.Y. 1988), courts should be even more loathe to transfer venue when both parties would be inconvenienced.

Further, the facts show that there is no meaningful nexus to the state of Florida to justify a transfer. At all relevant times, the Movant understood that it was making a loan to a New York real estate developer. It did so by forwarding commitments and the Pre-Petition Loan Documents to the Debtor in New York. The parties then negotiated such documents from their respective offices, the Debtor's in New York and the Movant's in Virginia. For reason to be further developed in the Adversary Proceeding, the Movant chose not provide the Debtor the funds obligated under the Pre-Petition Loan documents. The actions and conduct of the Movant in this regard have nothing to do with Florida. However, this same conduct ultimately caused the Debtor to seek relief in this Court. The parties necessary to litigate these claims are presently before the court. Accordingly, there is no factual bases to transfer venue of the Adversary Proceeding to Florida, a forum of mutual inconvenience.

In addition to the CORCO factors (which it has failed to demonstrate), Movant argues that the Adversary Proceeding should be transferred to the Middle District of Florida pursuant to the choice of law provisions in the Pre-Petition Loan Documents.[5] In support of this argument, the Movant relies heavily on Breeden v. Aegis Consumer Funding Group Inc. (In re Bennett Funding Group, Inc.), 259 B.R. 243, 251 (N.D.N.Y. 2001).

---

[5] See Motion of Community National Bank for an Order Transferring Venue of the Adversary Proceeding to the United States Bankruptcy Court for the Middle District of Florida, Jacksonville Division at ¶¶ 18-20.

Movant's reliance on <u>Bennett Funding</u> is misplaced. In <u>Bennett Funding</u>, the trustee of the debtor's estate filed an adversary proceeding against the defendants alleging, <u>inter alia</u>, claims for fraudulent inducement and fraudulent surroundings with respect to certain loan documents entered into between the parties. 259 B.R. at 252. The adversary proceeding in <u>Bennett Funding</u> was removed to the District Court because the claims at issue needed to be tried before a district court jury. <u>Id</u>. at 247. The defendants then moved to transfer venue of the adversary proceeding based on the "convenience of the parties" standard as well as the presence of forum selections clauses in the relevant loan documents. <u>Id</u>. at 251-53. The court granted the movant's venue transfer motion but not before stating the following:

> In particular, the Court is loathe to transfer a bankruptcy action pursuant to a forum selection clause when the majority of matters alleged constitute core proceedings under the bankruptcy code. Transferring a core matter that is not "inextricably intertwined" with non-core matters adversely impacts the strong public policy interest in centralizing all core matters in the bankruptcy court.

<u>Id</u>. at 252 (citations omitted). The court in <u>Bennett Funding</u> reasoned that since reference to the adversary proceeding had already been withdrawn, the policy behind centralizing core matters in the bankruptcy court is not applicable. <u>Id</u>.

In the instant case, the reference to the Adversary Proceeding has not been withdrawn, nor should it be. The Debtor asserts claims for fraudulent transfer pursuant to 11 U.S.C. § 548 and the equivalent state court statutes for avoidance of a lien on estate assets. These are entirely core matters, notwithstanding the Movant's assertion to the contrary. The basis for such claims are inextricably intertwined with the Debtor's claims for breach of contract and breach of fiduciary duty. Therefore, based on the authority cited by the court in <u>Bennett Funding</u> and the undisputed convenience of the parties, the Adversary Proceeding should not be transferred to the Middle District of Florida.

## CONCLUSION

For the foregoing reasons, the Movant's motions to transfer the Debtor's chapter 11 case as well as the Adversary Proceeding to the United States Bankruptcy Court for the Middle District of Florida should be denied in all respects.

Dated:   New York, New York
           May 12, 2004

                      Arent Fox PLLC
                      Attorneys for the Debtors

                      By:    /s/ Christopher J. Giaimo
                              Robert E. Grossman (RG-3602)
                              Schuyler G. Carroll (SC-0100)
                              Christopher J. Giaimo (CG-2260)
                              675 Broadway
                              New York, NY 10019
                              (212) 484-3900

# TABLE OF AUTHORITIES

## CASES

Page

Breeden v. Aegis Consumer Funding Group Inc.
(In re Bennett Funding Group, Inc.),
    259 B.R. 243 (N.D.N.Y. 2001) .................................................................24, 25

Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co.
(In re Commonwealth Oil Ref. Co.),
    596 F.2d 1239 (5th Cir. 1979) ....................................................11, 13, 22, 24

DeRosa v. C.P.P. Corp. (In re Legend Indus.),
    49 B.R. 935 (Bankr. E.D.N.Y. 1985) ...............................................................11

Gulf States Exploration Co. v. Manville Forest Prods. Corp.
(In re Manville Forest Prods. Corp.),
    896 F.2d 1384 (2d Cir. 1990)......................................................................11, 23

In re Bell Towers Assocs., Ltd.,
    86 B.R. 795 (Bankr. S.D.N.Y. 1988) ...............................................................18

In re Boca Dev. Assocs.,
    18 B.R. 648 (Bankr. S.D.N.Y. 1982).........................................18, 19, 20, 21

In re Enron Corp.,
    274 B.R. 327 (Bankr. S.D.N.Y. 2002) ...............................................11, 12, 13

In re Enron Corp.,
    284 B.R. 376 (Bankr. S.D.N.Y. 2002) ................................11, 13, 14, 17, 18,
    21, 22

In re Garden Manor Assocs., L.P.,
    99 B.R. 551 (Bankr. S.D.N.Y. 1988).........................................11, 13, 15, 19,
    20, 21, 24

In re Great Am. Res. Inc.,
    85 B.R. 444 (Bankr. N.D. Ohio 1988) .........................................................11

In re Melgar Enters.,
    140 B.R. 43 (Bankr. E.D.N.Y. 1992).....................................13, 15, 18, 20, 21

In re Old Delmar Corp.,
    45 B.R. 883 (S.D.N.Y. 1985)......................................................................15, 16

In re Pavilion Place Assocs.,
    88 B.R. 32 (Bankr. S.D.N.Y. 1988) ..........................................................18, 19

In re Suzanne de Lyon,
    125 B.R. 863 (Bankr. S.D.N.Y. 1991)...............................................19, 20, 22

Thomson McKinnon Sec., Inc. v. White (In re Thomson McKinnon Sec., Inc.),
  126 B.R. 833 (Bankr. S.D.N.Y. 1991)..............................................................................22

## STATUTES and RULES

11 U.S.C. § 363......................................................................................3, 16, 18, 20, 21

11 U.S.C. § 548......................................................................................................3, 25

28 U.S.C. § 1408................................................................................................2, 10, 12

28 U.S.C. § 1412......................................................................................................3, 12

FED. R. BANKR. P. 1014(a)(1) ..................................................................................12

FED. R. BANKR. P. 7087..............................................................................................22